Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/01/2024 09:07 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
CHANCE R. JOHNSON, APPELLANT.

___ N.W.3d___

Filed September 24, 2024.    No. A-23-1058.

1. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

2. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.

3. **Effectiveness of Counsel: Appeal and Error.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

4. **Sentences: Appeal and Error.** The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion.

5. **____: ____.** In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed.

6. **Effectiveness of Counsel: Postconviction: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial

counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

7. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

8. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

Appeal from the District Court for Lancaster County: Ryan S. Post, Judge. Affirmed.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Moore, Arterburn, and Welch, Judges.

Per Curiam.

## I. INTRODUCTION

Chance R. Johnson appeals his plea-based convictions for attempted child enticement with an electronic communication device, a Class II felony; three counts of attempted first degree sexual assault, each a Class IIA felony; and one count of attempted second degree sexual assault, a Class IIIA felony. On appeal, he contends that the sentences imposed by the district court were excessive and that he received ineffective assistance of trial counsel in various respects. Upon our review, we affirm Johnson's convictions and sentences.

## II. BACKGROUND

In September 2022, the State filed an information charging Johnson with four felony offenses as a result of his inappropriate relationships and sexual contact with multiple underage girls during the spring and summer of 2022. The charges included child enticement with an electronic communication device, a Class ID felony; first degree sexual assault, a Class II felony; and two counts of child abuse, each a Class IIIA felony. Subsequently, in October, the State filed an amended information that alleged additional charges and additional victims. The amended information charged Johnson with eight felony offenses: child enticement with an electronic communication device, a Class ID felony; three counts of first degree sexual assault, each a Class II felony; and four counts of child abuse, each a Class IIIA felony.

In October 2023, Johnson entered into a plea agreement with the State. Pursuant to this plea agreement, Johnson pled no contest to five felony offenses alleged by the State in an amended information: attempted child enticement with an electronic communication device, a Class II felony; three counts of attempted first degree sexual assault, each a Class IIA felony; and attempted second degree sexual assault, a Class IIIA felony. Each charge related to a separate female victim. Also as part of the plea agreement, the State agreed to withdraw a pending motion to revoke Johnson's post-release supervision in a different case; to not bring further charges associated with Johnson's actions toward 12 young females between February 15 and September 6, 2022; and to dismiss a case with similar facts that had occurred in Cass County.

During the plea hearing, upon the district court's inquiry, Johnson indicated that no one had threatened him or made promises to compel him to plead no contest to the amended charges. In addition, he affirmed that he understood both the constitutional rights he was waiving by pleading to the charges and the possible consequences of his pleas. Johnson informed the district court that he had been provided with

sufficient time to discuss the case with his attorney and that together they had discussed his options. He denied that his counsel had refused or neglected to do anything asked of him. Johnson entered pleas of no contest to the charges contained in the amended information.

The State provided a factual basis for Johnson's pleas. As to count 1 in the amended information, attempted child enticement with an electronic communication device, the State indicated that in August 2022, 15-year old L.H. met Johnson through a social media site. During their conversations, L.H. explicitly told Johnson, who was 22 years old, that she was only 15. Despite Johnson's knowing L.H.'s young age, their conversations became sexual, including Johnson's sending L.H. photographs of his naked genitals and videos of him masturbating. Johnson also told L.H. in explicit language that he wanted to have sexual intercourse with her. The two arranged to meet in person on August 30. Prior to this meeting, they discussed whether Johnson needed to bring a condom or whether L.H. was taking any form of birth control medication. During their meeting, Johnson kissed L.H., but they did not have sexual intercourse because Johnson's friends were with him. Johnson admitted to law enforcement that he had engaged in inappropriate, sexual conversations with L.H. over social media.

As to count 2 in the amended information, attempted first degree sexual assault, the State indicated that during the spring of 2022, 13-year-old K.G. began spending time with 22-year-old Johnson, who was acquainted with some of her friends. During that time period, Johnson came over to K.G.'s home by himself. While K.G. was lying on her side on her bed, Johnson began punching her in the back without warning or explanation. He then climbed on top of her and punched her multiple times all over her body. She told him to stop, and he held his hand over her mouth. Johnson then pinned K.G. to the bed, put his hand down her pants, and digitally penetrated her for approximately 5 minutes. When Johnson finished, he

told K.G. that if she told anyone about what he had done, he would "seriously fucking kill [her]." He also told her that no one would believe her. In an interview with law enforcement, Johnson admitted to digitally penetrating K.G.

As to the second count of attempted first degree sexual assault alleged in the amended information, the State indicated that during the summer of 2022, 14-year-old K.J.M. met Johnson at a fast-food restaurant where they both worked. Eventually, they began seeing each other outside of work. In August, K.J.M. accompanied Johnson to a public park in Waverly, Nebraska. At the park, Johnson provided K.J.M. with marijuana, which she smoked to the point of intoxication. Johnson then engaged in penile-vaginal intercourse with K.J.M. in the park's restroom. K.J.M. told law enforcement that she verbally consented to the sexual contact, but that she had not wanted to. She also explained that at one point during the encounter, she attempted to push Johnson away from her, but he grabbed her leg so hard it left a bruise. In an interview with law enforcement, Johnson admitted to having penile-vaginal intercourse with K.J.M.

As to the third and final count of attempted first degree sexual assault alleged in the amended information, the State provided the following factual basis. During the spring of 2022, 16-year-old C.K. worked with Johnson at a fast-food restaurant. She and Johnson had mutual friends and, as a result, would often see each other at parties. C.K. engaged in consensual sex with Johnson. However, during their relationship, Johnson began to physically hurt C.K., including punching her so hard it would leave bruises on her body and choking her to the point that she was unable to breathe. C.K. reported that at one point in the relationship, Johnson started to have penile-vaginal sexual intercourse with her, but she told him to stop. Johnson refused to stop and continued to have sex with her. Afterward, he threatened her and told her not to report his behavior. Johnson admitted to law enforcement that

he had sexual intercourse with C.K., but indicated his belief that such sex was always consensual.

As to the fifth count of the amended information, attempted second degree sexual assault, the State indicated that in August 2022, 15-year-old K.A.M. met Johnson at a mall in Lincoln, Nebraska. When they met, Johnson told her that he was a junior in high school, even though he was actually 22 years old. During their relationship, Johnson would routinely act violently toward K.A.M., including choking her, hitting her with a belt, slapping her in the face, and hitting her with closed fists all over her body. On September 3, K.A.M., her parents, and Johnson went to a movie theater where K.A.M. and Johnson watched one movie and her parents watched a different movie. During the movie, Johnson put his hands down K.A.M.'s pants, underneath her underwear, and digitally penetrated her vagina. When K.A.M. told Johnson to stop, he told her to "shut up" and continued penetrating her for approximately 5 minutes. After he was finished, Johnson told K.A.M. that he had previously been charged with manslaughter and "if the cops ever talk to you about me, don't say anything or I will hurt you worse than before."

Ultimately, the district court found that Johnson understood the nature of the charges against him and the possible sentences; that his no contest pleas were made freely, voluntarily, knowingly, and intelligently; and that the factual basis supported his pleas. The court then accepted Johnson's no contest pleas to attempted child enticement with an electronic communication device; three counts of attempted first degree sexual assault; and attempted second degree sexual assault. The court ordered that a presentence investigation report (PSR) be completed prior to sentencing and scheduled the sentencing hearing for December 2023.

At the sentencing hearing, Johnson's defense counsel argued in favor of a "fair" prison sentence, noting that Johnson had taken responsibility for his actions and felt remorse for what he had done. To the contrary, the State argued in favor of a

"substantial period of incarceration," referring to Johnson as a "serial rapist" and noting his high risk to reoffend.

In its comments prior to imposing a sentence, the district court indicated that it had read the PSR "in detail." The court found that Johnson posed a high risk to reoffend, agreed with the State's characterization of Johnson as a "serial rapist," and stated that he was a danger to society. The court explained that Johnson had abused his position as an adult, had manipulated young girls, and had left an "unspeakable" impact on his victims' lives. The court sentenced Johnson to a period of 14 to 30 years' imprisonment on his conviction for attempted child enticement with an electronic communication device; to a period of 19 to 20 years' imprisonment on the attempted first degree sexual assault conviction that involved K.G. as his victim; to a period of 15 to 20 years' imprisonment on each of his other two attempted first degree sexual assault convictions; and to a period of 2 to 3 years' imprisonment on his attempted second degree sexual assault conviction. The sentences were ordered to run consecutive to one another, such that Johnson was sentenced to a total of 65 to 93 years' imprisonment. Johnson was also required to register as a sex offender for life and was "subject to lifetime community supervision by the Division of Parole supervision" upon his release.

Johnson appeals here.

## III. ASSIGNMENTS OF ERROR

Johnson asserts on appeal that the district court abused its discretion in imposing excessive sentences. He also asserts that he received ineffective assistance of trial counsel when counsel failed to depose any of the alleged victims; continued the proceedings for a lengthy period of time while Johnson remained in custody; failed to file a motion to suppress the statement Johnson made to law enforcement following his arrest; and promised Johnson he would receive a lenient sentence if he pled to the amended charges.

## IV. STANDARD OF REVIEW

[1] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[2,3] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCES

Johnson argues in his brief on appeal that the district court imposed excessive sentences because the court improperly weighed and considered the relevant sentencing factors. He argues that such a lengthy aggregate prison sentence as was imposed in this case was not warranted. Upon our review, we find no abuse of discretion in the district court's sentencing determination.

[4] The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v.*

*Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016). Johnson was convicted of attempted child enticement with an electronic communication device, a Class II felony. A Class II felony is punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Johnson's sentence of 14 to 30 years' imprisonment is clearly within the statutory limits. Johnson was also convicted of three counts of attempted first degree sexual assault, each a Class IIA felony punishable by up to 20 years' imprisonment. *Id*. Johnson's sentences of 19 to 20 years' imprisonment on one count and 15 to 20 years' imprisonment on the other two counts are clearly within the statutory limits. Finally, Johnson was convicted of attempted second degree sexual assault, a Class IIIA felony punishable by up to 3 years' imprisonment. *Id*. Johnson's sentence of 2 to 3 years' imprisonment is clearly within the statutory limits.

[5] Because Johnson's sentences are within statutory limits, we review the district court's sentences for an abuse of discretion. In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *State v. Starks, supra*. Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

The district court ordered Johnson to participate in a PSR investigation prior to sentencing. That PSR indicates that at the time of sentencing, Johnson was 23 years old. He had graduated from high school and had one young child, of whom

he did not have custody. Johnson suffered from multiple mental health conditions, including depression, anxiety, bipolar disorder, and attention deficit hyperactivity disorder. He had attempted suicide multiple times in the past. Johnson reported that at the time of the current offenses, he was abusing Xanax, OxyContin, and fentanyl. He desired treatment for his mental health and for his substance abuse.

In May 2020, Johnson was convicted of first degree false imprisonment and child abuse as a result of his sexual relationship with a 15-year-old girl when he was 19 years old. He was sentenced to 2 years in prison and 18 months of post-release supervision. He began his prison sentence in May 2022 and was released in July. His current offenses occurred both immediately before and immediately after he served this sentence. Johnson was still serving his term of post-release supervision upon his arrest for the current offenses. In addition to his prior sexual-related offense, Johnson has also previously been convicted of possession of marijuana, possession of drug paraphernalia, being a minor in possession of alcohol, and driving during a period of suspension.

During Johnson's PSR interview, he admitted to engaging in either inappropriate sexual conversations or consensual sexual contact with each of the victims named in the current offenses. However, he denied knowing how young the victims were until after he had started a relationship with them. He also denied being physically violent or threatening any of the girls. The PSR indicates testing conducted revealed that Johnson posed a very high risk of engaging in further criminal acts. He posed a high risk of committing another sexually-based criminal act.

Despite Johnson's assertions to the contrary on appeal, the record demonstrates that the district court sufficiently considered all of the relevant sentencing factors in making its sentencing determination. The court explicitly stated during the sentencing hearing that it had considered the comments of defense counsel, Johnson's statements about the offenses, his

young age, his mentality, his criminal history, his background, and the motivation involved in the current offenses. The court then went on to explain that any mitigating factors present were outweighed by the heinous nature of his serious offenses and by the fact that the offenses were committed so soon after he was released from prison for his prior sexually-based offense. Considering all of the relevant sentencing factors and the applicable law, we conclude that the sentences imposed by the district court were not excessive and that the court did not abuse its discretion when it sentenced Johnson within the statutory limits.

## 2. Ineffective Assistance of Counsel

[6] Through different counsel, Johnson contends that his trial counsel provided ineffective assistance in four ways. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

[7,8] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition

for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. German, supra*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*. Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id*.

### (a) Failure to Depose Victims

Johnson alleges that he received ineffective assistance of trial counsel because counsel failed to depose any of the

girls named as victims in the charged offenses. He asserts that "deposing the girls involved would have revealed significantly exculpatory and mitigating evidence in [his] favor," particularly because he was friends with the girls. Brief for appellant at 12. We find that the record refutes Johnson's assertion of dissatisfaction with counsel's failure to depose the victims.

During the plea colloquy, the district court and Johnson engaged in the following discussion:

> THE COURT: Have you told your attorney everything you know about this case?
>
> [Johnson:] Yes.
>
> THE COURT: Are you aware of anything that could help you in your case that you've not discussed with your lawyer?
>
> [Johnson:] No.
>
> THE COURT: Are you satisfied with the job your lawyer's done for you in this case?
>
> [Johnson:] Yes.
>
> THE COURT: Do you believe he's a competent lawyer and knows what he's doing?
>
> [Johnson:] Yes.
>
> THE COURT: Has he refused or neglected to do anything you've asked him to do?
>
> [Johnson:] No.
>
> THE COURT: And have you had enough time to talk with your lawyer about this case?
>
> [Johnson:] Yes.

Such discussion indicates that Johnson and his trial counsel discussed "anything" that could help in defending Johnson from the charges, which would include the possibility of deposing the victims. The discussion also indicates that trial counsel did not neglect or refuse to do anything asked of him. As such, Johnson clearly did not ask counsel to pursue the depositions and, instead, chose to enter a plea agreement regarding the amended charges. Johnson cannot now claim, in

contravention to his declaration during the colloquy, that trial counsel did, in fact, fail to depose the victims contrary to his wishes. As such, his claim of ineffective assistance of counsel must fail.

(b) Request to Continue Proceedings

Johnson alleges that he received ineffective assistance of trial counsel because counsel "repeatedly continued [Johnson's] case for an unnecessarily lengthy period of time while [Johnson] remained in pretrial custody." Brief for appellant at 13. Johnson further alleges that such continuances prejudiced him by forcing him to "plead[] to charges that he may not have otherwise plead [sic] to, simply so he could be released from custody, or at a minimum know what his ultimate sentence would be." *Id*. We read Johnson's argument to assert that given the length of time that he spent incarcerated prior to the resolution of the case, he was no longer in the right state of mind to enter a knowing and voluntary plea. Our record refutes this claim and, as such, demonstrates that Johnson cannot demonstrate prejudice due to trial counsel's alleged deficient performance in requesting continuances.

During the plea colloquy, the district court asked Johnson about his ability to understand and enter into the plea agreement with the State. Johnson indicated that he suffered from multiple mental illnesses, but indicated that despite the symptoms of these illnesses, he still understood what was occurring during the plea hearing. Johnson informed the court, in his own words, that he wished to "tak[e] a plea of no contest to the amended charges." Johnson also explicitly indicated that he was choosing to plead no contest to the amended charges freely and voluntarily. The court found, through its questioning and observation of Johnson, that

> [Johnson] is following my questions and is giving suitable answers to the questions I've asked. Physically, including his eyes, speech, and demeanor, he appears to be alert and normal. I conclude that he is not under the

influence of, or being adversely affected by, any alcohol, drugs, narcotics, or other pills; and I find he is competent to proceed in this matter.

Johnson's discussion with the district court during the plea colloquy demonstrates that he fully understood the effects and consequences of his no contest pleas and also reflects that Johnson entered the pleas knowingly and voluntarily. Johnson's assertion now that he was not, in fact, in the right state of mind to enter the pleas directly contradicts his prior statements to the court. In addition, although given an opportunity to explain any hesitation with the plea agreement or with entering his pleas, Johnson offered no indication to the district court that he was unsure of how to proceed. We conclude that the record refutes Johnson's claim and find that he cannot show any prejudice as a result of counsel's alleged requests for multiple continuances during the proceedings.

### (c) Failure to File Motion to Suppress Johnson's Statements to Law Enforcement

Johnson next alleges that his trial counsel provided ineffective assistance in failing to move to suppress Johnson's statements to law enforcement. He asserts that he told counsel that prior to the statements he "did not knowingly or freely or intelligently or willfully waive his rights to remain silent" because he was very anxious and had not been taking his medication. Brief for appellant at 14. The record on appeal is insufficient to address this claim. The record does not contain any information regarding trial counsel's decision not to file a motion to suppress or of conversations between counsel and Johnson regarding the likelihood of success of such a motion. See, e.g., *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020); *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020). This claim is preserved for postconviction review.

### (d) Promise of Lenient Aggregate Sentence

Johnson's final allegation of ineffective assistance of trial counsel asserts that counsel induced Johnson to enter into the

plea agreement by promising him he would receive an aggregate sentence "of approximately 10 to 20 years imprisonment." Brief for appellant at 15. The record refutes Johnson's claim. During the plea colloquy, the district court asked Johnson if anyone had made any promises to him in exchange for his no contest pleas to the amended charges. Johnson answered, "No." The district court also specifically asked him if anyone had made any promises or representations regarding what the actual sentences would be upon him entering no contest pleas. Johnson again answered, "No." Having unequivocally represented to the district court on the record that no promises were made by anyone regarding his sentences, Johnson cannot now claim otherwise to obtain postconviction relief. His claim must fail.

## VI. CONCLUSION

We do not find that the district court abused its discretion in sentencing Johnson. In addition, Johnson's claims of ineffective assistance of counsel are directly refuted by the record, with the exception of his claim that counsel failed to file a motion to suppress his statement to law enforcement. Our record is insufficient to review that claim, and, as such, the claim is preserved for postconviction review. Johnson's convictions and sentences are affirmed.

AFFIRMED.

ARTERBURN, Judge, concurring in part, and in part dissenting.

I agree with the majority's decision to affirm Johnson's convictions and sentences. However, I must respectfully dissent from that portion of the majority opinion that finds there is an insufficient record to address Johnson's allegation that his trial counsel provided ineffective assistance in failing to file a motion to suppress Johnson's statement to law enforcement. And, which, accordingly, preserves this issue for postconviction review. I believe that our record on direct appeal

is sufficient to review this allegation of ineffective assistance and that after such review, the allegation is directly refuted.

In arguing that trial counsel provided ineffective assistance in failing to file a motion to suppress his statement to law enforcement, Johnson asserts that he told counsel that prior to the statements he "did not knowingly or freely or intelligently or willfully waive his rights to remain silent" because he was very anxious and had not been taking his medication. Brief for appellant at 14. As was discussed in the majority opinion, Johnson affirmatively indicated during the plea colloquy with the district court that he and his trial counsel discussed "anything" that could help in defending Johnson from the charges. Presumably, then, Johnson did discuss the possibility of filing a motion to suppress his statements with trial counsel, given that he now asserts he discussed his mental condition at the time of the police interview with trial counsel. Nonetheless, at the plea hearing, Johnson affirmed to the district court that trial counsel did not neglect or refuse to do anything asked of him. This suggests that Johnson did not actually request counsel to file the motion to suppress or that after discussion with counsel, Johnson agreed that no motion should be filed in light of all the factors present in the case, including any proffered plea agreements from the State. During the plea colloquy, the district court informed Johnson that he had a right to request a suppression hearing specifically concerning any statements he had made to law enforcement officials and that by pleading no contest, he was giving up that right. Johnson affirmatively indicated that he understood that he was waiving his right to a suppression hearing regarding the statements he had made to police.

Given the specificity with which the district court advised Johnson of his right to challenge his statements to law enforcement via a motion to suppress, coupled with Johnson's affirmations that he was satisfied with his trial counsel's performance and that counsel had done everything Johnson asked, I believe the record refutes Johnson's claim of ineffective assistance

of trial counsel in this regard. The record demonstrates that Johnson was aware of his right to challenge his statements to law enforcement and his understanding that by pleading to the charges he was waiving such right. That waiver should mean something. Given the district court's thorough examination of Johnson with regard to trial counsel's efforts to represent him and carry out his wishes, Johnson's valid waiver of his right to seek suppression of his statements to police should preclude him from being able to change his mind and now challenge whether a motion to suppress should have been filed.