IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TOMES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDYN E. TOMES, APPELLANT.

Filed November 26, 2024.    Nos. A-24-243, A-24-244.

Appeals from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Todd C. Molvar for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Brandyn E. Tomes appeals his plea-based convictions and sentences entered by the Lancaster County District Court. He was sentenced to an aggregate of 26 to 38 years' imprisonment with all sentences ordered to run consecutively. The convictions result from two separate information filings; however, the cases are consolidated on appeal. Tomes argues that the district court abused its discretion by imposing excessive sentences and that he was denied effective assistance of counsel. Upon our review, we affirm his convictions and sentences.

## II. BACKGROUND

Tomes was charged under CR23-701 with burglary, possession of a stolen firearm, and possession of a firearm by a prohibited person. Under CR23-702, he was charged with theft by receiving stolen property ($1,500-$5,000) and criminal possession of transaction devices, four or more. Pursuant to a plea agreement, the State amended the information in CR23-701 to charge

- 1 -

only burglary and attempted possession of a firearm by a prohibited person, in exchange for Tomes' plea of guilty to the amended charges and plea of guilty to the original charges of CR23-702. The State also agreed that three other cases would be dismissed.

As a factual basis for the pleas, the State articulated the following events. In January 2023, staff members of a Lincoln, Nebraska, laundromat reported the business had been broken into the night before and that cash had been stolen. Police officers observed broken glass below a shattered bathroom window and, upon inspection, found a piece of concrete on the bathroom floor, indicating someone had entered the building through the broken window. Video surveillance footage was obtained, which showed Tomes inside the laundromat, rummaging through the laundromat cash register.

From January through April 2023, a victim reported 14 instances of his home being robbed and that he had lost over $112,000 worth of property. He reported stolen items including family heirlooms, 6 firearms, gold bars, U.S. currency, a stamp collection, bicycles, guitars, tools, and collectibles. During police investigation of the robberies, one of the reportedly stolen firearms was sold at a Lincoln pawnshop. A confidential informant (CI) informed police that Tomes had given him the stolen firearm and asked the CI to sell the firearm in exchange for a portion of the proceeds. The CI was then used to execute a controlled buy of the remaining firearms, and officers observed Tomes exchange two of the stolen firearms with the CI. On three separate occasions, Tomes attempted to convince the CI to sell the guns on his behalf.

The same robbery victim then reported to police that his car had been stolen. Police located the stolen vehicle in the parking lot of a storage unit facility where Tomes' longtime girlfriend was renting a unit. Police apprehended Tomes' girlfriend while she was removing items from inside the stolen vehicle which were later confirmed to be the victim's stolen property.

Concurrently, Tomes was hiding inside the storage unit and refusing to come out, even after Lincoln police SWAT intervened. Video surveillance footage later confirmed that Tomes was hiding inside of a different unit than police had previously thought and showed him departing the scene. Sometime later, police executed a warrant on a storage unit rented by Tomes and discovered 44 of the reportedly stolen items, which were valued at $6,100.

Another victim also reported having been robbed during this 4-month period. He told police that his storage unit had been broken into and a motorcycle valued at $3,430 had been stolen. The next day, Tomes was observed riding the motorcycle.

The U.S. Marshall's Task Force later apprehended Tomes on warrants related to the burglaries, and Tomes was taken into custody. When he was searched at the jail, law enforcement recovered 10 different bank cards belonging to 5 different people, someone else's driver's license, and numerous keys. At the time of his arrest, Tomes was a convicted felon.

Following the recitation of the State's factual basis, the district court confirmed Tomes believed there was a sufficient factual basis for the charges against him, that Tomes wished to plead guilty to those charges, and that his pleas were entered knowingly, voluntarily, freely, and intelligently. The district court accepted Tomes' pleas and adjudged him guilty of the four crimes with which he was charged.

At the sentencing hearing, the district court heard arguments from the State, Tomes, and Tomes' counsel as to the appropriate sentence to be imposed. The court explicitly noted it had considered the presentence investigation (PSI) and the relevant statutory sentencing factors, and

ultimately sentenced Tomes to 8 to 12 years' imprisonment for burglary, 10 to 14 years for attempted possession of a firearm by a prohibited person, 1 to 2 years for theft by receiving stolen property, and 7 to 10 years for possession of transactional devices, four or more. All sentences were ordered to run consecutively. Tomes now appeals.

## III. ASSIGNMENTS OF ERROR

Tomes assigns as error, restated, that the district court erred by imposing an excessive sentence and that he was denied effective assistance of counsel.

## IV. STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of counsel is raised on direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitute deficient performance by trial counsel. *Id*.

## V. ANALYSIS

### 1. SENTENCES IMPOSED NOT EXCESSIVE

Tomes argues that the district court imposed excessive sentences because it failed to consider relevant statutory factors including his education and employment experience, background, mentality, and the nature of the offenses. We disagree.

The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Johnson*, 33 Neb. App. 194, 11 N.W.3d 703 (2024). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *Id*.

Tomes was convicted of burglary and criminal possession of financial transaction devices, four or more, both Class IIA felonies, punishable by a maximum of 20 years' imprisonment. See, Neb. Rev. Stat. §§ 28-507, 28-621(4) (Reissue 2016); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). He was also convicted of attempted possession of a firearm by a prohibited person, a Class II felony, punishable by a maximum of 50 years' imprisonment, and theft by receiving stolen

property ($1,500-$5,000), a Class IV felony, punishable by a maximum of 2 years' imprisonment and 12 months' post-release supervision. See, Neb. Rev. Stat. § 28-201(4)(a) (Cum. Supp. 2022); Neb. Rev. Stat. § 28-1206 (Reissue 2016); § 28-105. Tomes was sentenced to 8 to 12 years' imprisonment for burglary, 10 to 14 years for attempted possession of a firearm by a prohibited person, 1 to 2 years for theft by receiving stolen property, and 7 to 10 years for possession of transactional devices.

Although Tomes' sentences were well within the statutory limits, he nonetheless argues that the sentences imposed were excessive. We review his claim for abuse of discretion, determining whether the sentencing court properly considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. See *State v. Johnson, supra*. Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

The PSI indicates Tomes was 37 years old at the time of sentencing. The report showed Tomes' wife had died following a car accident in 2018 and that Tomes' biological father had been intermittently involved in his life prior to passing when Tomes was 25 years old. Tomes has three children ranging in age from infancy to adolescence, one of whom he has primary custody. Tomes completed a Simple Screening Instrument and scored within the moderate to high risk level for substance misuse, and Tomes self-reported struggling with a methamphetamine addiction.

Tomes also completed the Standardized Risk Assessment Reporting Format for substance abuse offenders and his score reflected a high risk for recidivism. The score of his LS/CMI assessment also reflected a "Very High" risk to reoffend. The PSI noted Tomes' criminal history which included multiple drug, theft, and assault offenses, specifically noting that, despite previous consequences, Tomes' criminal history "reflect[ed] a general disregard for the laws and an attitude that is supportive of crime." Moreover, it stated that he has had previous terms of supervision revoked and, at the time, was on an active term of probation out of Gage County in which a motion to revoke had been filed. As noted throughout the report, Tomes' alcohol/drug use is a frequent concern and apparent reflection of poor coping skills.

The report reflects that Tomes expressed a desire to obtain substance abuse treatment and maintain sobriety, and that he had participated in programming during his incarceration geared toward addiction. Tomes took responsibility for his offenses and seemed remorseful.

Despite Tomes' assertions to the contrary on appeal, the record reflects that the district court sufficiently considered all relevant sentencing factors in making its sentencing determination. The court explicitly stated during the sentencing hearing that it had considered the nature and circumstances of the crimes and Tomes' history, character, and condition. It further stated it had found there were compelling reasons to not place Tomes on probation, and that Tomes' imprisonment was necessary for the safety and security of the public, and that a lesser sentence would depreciate the seriousness of his crimes and promote a disrespect for the law. The court announced its reasoning after pointing out that Tomes had a lengthy criminal history and that

probation was not an appropriate sentence because he had previously been given that opportunity and had not taken advantage of it. Considering all the relevant sentencing factors and the applicable law, we conclude that the sentences imposed by the district court were not excessive and that the court did not abuse its discretion when it sentenced Tomes within the statutory limits.

## 2. TRIAL COUNSEL NOT INEFFECTIVE

Tomes assigns he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments because his counsel failed to provide or review discovery with him and failed to meaningfully discuss the plea agreement with him. Upon our review, we disagree.

On direct appeal, Tomes has new counsel who was not his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dap, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). In the context of a plea, the defendant must show that his or her counsel erred and there is a reasonable probability that but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial. *Id*.

We turn now to each of Tomes' ineffective assistance of counsel claims.

### (a) Discovery

Tomes argues that trial counsel never provided him discovery materials during the plea negotiation process, nor did he review the discovery materials with him. In an effort to show prejudice, Tomes argues that "he did not have sufficient information to determine whether to

pursue trial, and that he ultimately entered pleas to charges that he had not previously agreed to during plea negotiations." Brief for appellant at 22.

Tomes' claim, as pertaining to trial counsel's failure to provide and discuss discovery, does not identify any discovery that was in counsel's possession or any discovery which would have been exculpatory. Compare *State v. Woodruff*, 30 Neb. App. 193, 965 N.W.2d 836 (2021) (defendant identified certain exculpatory evidence which counsel did not discuss or review with him). Furthermore, our review of the record reveals that Tomes could not prove prejudice because the evidence provided as a basis for his plea was overwhelmingly in support of his conviction and he received a favorable plea deal.

At the plea hearing, the State recited, as a basis for the charges, there was evidence that the Lincoln laundromat had been broken into, and possessed video footage, recorded the night of the break-in, which showed Tomes rifling through the laundromat cash register after operating hours. The State also recited evidence that Tomes had exchanged stolen firearms with a CI and coordinated a sale. Further, the State informed there was evidence that police had recovered various items of reportedly stolen property from Tomes' person, as well as storage units rented in his name. Also, according to the State, Tomes was seen riding the stolen motorcycle and his longtime girlfriend was in possession of the stolen vehicle, which was filled with reportedly stolen items.

Tomes received an extremely favorable plea agreement considering the evidence against him. In exchange for his plea, the State dropped the charge of possession of a stolen firearm—even though interactions with the CI provided substantial evidence for the charge—allowing Tomes to avoid conviction of additional felony charges. The State also reduced the charge of possession of a firearm by a prohibited person to an attempt of the same, allowing Tomes to avoid a mandatory minimum sentence. Most notably, the State dismissed three additional cases against Tomes.

We conclude that, even if trial counsel had failed to provide or review discovery with Tomes, given the substantial evidence against him, he cannot show a reasonable probability that this allegedly deficient performance would have resulted in him proceeding to trial rather than accepting a plea deal. See *State v. Jaeger, supra*. Tomes therefore cannot show prejudice and his assignment of error is without merit. See *id.*

(b) Meaningfully Discuss Plea Agreement

Although Tomes assigns that trial counsel failed to meaningfully discuss the plea agreement with him, he argues that the plea agreement as recited at the plea hearing, and to which he entered his pleas, included charges that were not communicated to him by trial counsel prior to the plea hearing. He claims trial counsel did not object to or correct the plea agreement recited at the plea hearing prior to Tomes entering his pleas. This is refuted by the record. The court advised Tomes as follows:

> And, Mr. Tomes, you understand that the charges you're pleading to in the Amended Information are Count 1, burglary a Class 2A felony, in Count 2 attempted possession of a firearm by a prohibited person, a Class 2 felony; and the charges you're pleading to in the Information at CR23-7- -- 23-702 are Count 1, theft by receiving stolen property, a Class

- 6 -

4 felony, and Count 2, criminal possession of financial transaction, a Class 2A felony; those are the four charges that you're pleading to today?

Tomes responded in the affirmative. Thereafter, the court requested the State to set forth the plea agreement and the following colloquy occurred:

[STATE'S COUNSEL]: Mr. Tomes will be pleading to the Amended Information in CR23-701, two charges there. In CR23-702 he'll be pleading as charged to that Information. And, in exchange, the State would not be proceeding on the other charges, and the three other cases, CR23-1248, 1246 and 694, will be dismissed at the acceptance of Mr. Tomes's [sic] plea to the two – to the Amended Information and the Information.

THE COURT: And are those going to be dismissed at State's cost?

[STATE'S COUNSEL]: At defendant's cost, they're part of the plea agreement, Your Honor.

THE COURT: Okay. And, [defense counsel], is that your understanding of the plea agreement?

[TOMES' COUNSEL]: It is.

THE COURT: And, Mr. Tomes, you've heard what the attorneys have said their understanding of the plea agreement is. Is that your understanding of the plea agreement, as well?

[TOMES]: Yes, ma'am.

The record demonstrates Tomes was advised of the specific charges to which he would be pleading and agreed that it conformed to his understanding of the plea agreement. He had the opportunity to advise the court that new and unheard-of charges had been introduced that he did not wish to plead guilty to. He, however, explicitly agreed that his understanding of the pleas he entered conformed with those stated at the plea hearing. We therefore find Tomes' assignment of error on this issue to be refuted by the record.

## VI. CONCLUSION

For the foregoing reasons, we affirm Tomes' convictions and sentences.

AFFIRMED.